## IN THE SUPREME COURT OF THE STATE OF IDAHO

<table>
<tr><td>

CHARLES V. HERNANDEZ,

    Plaintiff-Appellant,

v.

KERRI A. HERNANDEZ,

    Defendant,

and

JANICE AUSBURN,

    Intervenor-Respondent.

_____

JANICE AUSBURN,

    Plaintiff-Respondent,

v.

CHARLES V. HERNANDEZ, biological parent,

    Defendant-Appellant,

and

KERRI A. HERNANDEZ, biological parent,

    Defendant.

_____

</td><td>

Docket No. 37779

Boise, September 2011 Term

2011 Opinion No. 108

Filed: November 2, 2011

Stephen W. Kenyon, Clerk

Docket No. 37780

</td></tr>
</table>

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County. Hon. George G. Hicks, Magistrate Judge; Hon. Michael E. Wetherell, District Judge.

The decision of the district court is affirmed.

Hall, Friedly & Ward, Mountain Home, for appellant. Robert Ward argued.

Egusquiza Law Offices, Chtd., Mountain Home, for respondent. Mitchell L. Egusquiza argued.

_____

J. JONES, Justice.

This case involves a custody dispute between Charles V. Hernandez, the biological father of two minor children, and Janice Ausburn, the children's maternal grandmother. The magistrate court granted shared physical custody to Charles and Janice. Charles appealed to the district court, which affirmed. We affirm the district court.

## I.
## BACKGROUND

Charles V. Hernandez and Kerri A. Hernandez divorced in Elmore County in September 2000. Charles and Kerri had two minor children at the time. Before their divorce, Charles and Kerri briefly lived with Kerri's mother, Janice Ausburn, in Houston, Texas. Janice also briefly lived with the couple in Mountain Home before the divorce. Janice moved into her own place in Mountain Home just before Charles and Kerri divorced. After the divorce, Charles moved to Houston, Texas, and has lived there since. In the divorce decree, the court awarded Kerri primary physical custody and Charles reasonable visitation, including four weeks each summer.

In March 2001, Kerri left the children with Janice because Kerri was struggling with drug addiction. The children continued to live with Janice and she raised them without physical help from Charles or Kerri. One of the children, an infant at the time, did live with a maternal aunt for about a year and a half while Janice recovered from shoulder surgery, but the children otherwise lived with Janice exclusively. Charles had no physical contact with the children between November 2002 and early 2008. He did occasionally speak with the children by phone over the years. Charles also paid some child support until March 2008, when this action was filed. Kerri continued to struggle with personal issues and had nothing to do with the children after turning them over to Janice. Despite acting as the children's primary custodian, Janice never petitioned a court for guardianship.

In March 2008, Charles and Kerri stipulated to a change in the custody arrangement, whereby Charles would have sole physical custody of the children and Kerri would have visitation each summer. The court entered a modification order based on the stipulation. The court was unaware that the children were actually residing with Janice when it entered the order. Janice was not made aware of either the stipulation or the order.

2

After the court entered the modification order, Charles and Kerri planned for Kerri to take the children from school in Mountain Home, without telling Janice, and to meet Charles in Salt Lake City, Utah. The couple agreed that Kerri would hand over the children and Charles would take them to Houston. Janice found out about the plan and kept the boys home from school on the day Kerri was to take them. Janice then filed a separate action for custody.

In the subsequent custody proceeding, the court considered whether Charles or Janice should be the children's primary custodian. The court ultimately granted Charles sole legal custody and Charles and Janice shared physical custody, with Charles having primary custody and Janice having custody for six weeks during the summers. The court based its decision largely on a court-ordered parenting assessment and custody recommendation prepared by a third-party evaluator.

Charles appealed the magistrate court's decision to the district court. He did not challenge the magistrate judge's factual findings but, rather, argued the award of limited custodial rights to Janice violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In its decision affirming the magistrate court, the district court noted, "None of the substantive factual findings of the Magistrate Court are at issue for purposes of this decision. The only question before this Court is whether Idaho law as applied and/or on its face is in contradiction to established United States Supreme Court precedent." Charles filed a timely appeal to this Court.[1]

## II.
## ISSUES ON APPEAL

The following issues are presented on appeal:

(1)    Whether I.C. § 32-717(3) facially violates the Fourteenth Amendment?

(2)    Whether I.C. § 32-717(3) is unconstitutional as applied in this case?

(3)    Whether this Court's holding in *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989) violates the Fourteenth Amendment?

(4)    Whether Charles is entitled to attorney fees on appeal?

---

[1] Charles asserts several additional assignments of error before this Court, but nothing in the record suggests that he raised those other issues in the district court. "On appeal of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *In Re Doe*, 147 Idaho 243, 248, 207 P.3d 974, 979 (2009). Because the district court did not consider or rule upon the other issues Charles now raises, we will not consider them on appeal.

# III.
# ANALYSIS

## A. Standard of Review.

Constitutional questions are questions of law over which we exercise free review. *Allied Bail Bonds, Inc. v. County of Kootenai*, 151 Idaho 405, __ , 258 P.3d 340, __ (2011). This Court presumes the constitutionality of challenged statutes and we are obligated to seek an interpretation of the statute that upholds its constitutionality. *American Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 869, 154 P.3d 433, 440 (2007). The party challenging a statute bears the burden of proving it unconstitutional. *Id.* To succeed on a facial challenge, one must demonstrate that under no circumstances is the statute valid. *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003). But, to prevail in an as-applied challenge, one must demonstrate only that the statute is unconstitutional as applied in a specific instance. *Lochsa Falls, L.L.C. v. State*, 147 Idaho 232, 241, 207 P.3d 963, 972 (2009).

## B. I.C. § 32-717(3) is facially constitutional.

The statute at issue here, I.C. § 32-717(3), provides:

> In any case where a child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interests of the child.

Charles contends that I.C. § 32-717(3) is facially unconstitutional in light of the U.S. Supreme Court's decision in *Troxel v. Granville*, 530 U.S. 57 (2000).

In *Troxel*, the Supreme Court considered and invalidated a Washington visitation statute. *Troxel*, 530 U.S. at 60, 63. That Washington statute provided:

> Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances.

*Troxel*, 530 U.S. at 61 (citing Wash. Rev. Code § 26.10.160(3) (1994)). Charles maintains "*Troxel* specifically required that unless a parent is unfit, the Court must presume that the parent's decisions regarding the care and custody of the children are in the children's best interest." Charles therefore argues that "because [I.C. § 32-717(3)] places parents and grandparents on equal footing regarding custody without requiring a finding that the parents are

unfit," I.C. § 32-717(3) infringes on a parent's fundamental rights. Janice counters that the *Troxel* court recognized a State's authority to make custody determinations contrary to a parent's demands, if a court appropriately considers a parent's wishes. Janice also argues that I.C. § 32-717(3) contains a built-in deference to parental decisionmaking because a child cannot come to live with a grandparent in a stable relationship absent a parent's approval or acquiescence.

The *Troxel* court recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children," stating "it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects [that] fundamental right." *Id.* at 66 (plurality opinion by O'Connor, J.). *See also id*. at 77 (Souter, J., concurring); *id.* at 80 (Thomas, J., concurring); *id.* at 86 (Stevens, J., dissenting); *id.* at 95 (Kennedy, J., dissenting). A majority of the Court also agreed that Washington's statute unconstitutionally infringed on that right, but the Court did not reach a consensus holding. *Id.* at 72–73 (plurality opinion by O'Connor, J.); *id.* at 75–79 (Souter, J., concurring); *id.* at 80 (Thomas, J., concurring).

A four-justice plurality said that the statute was "breathtakingly broad" and that, "as applied to Granville [the children's mother and respondent], [it] unconstitutionally infringes on [her] fundamental parental right [to make decisions concerning the care, custody and control of her children]." *Id.* at 67, 72–73 (plurality opinion by O'Connor, J.). Justices Souter and Thomas opined that the statute was unconstitutional, but for different reasons. Justice Souter wrote that the statute was facially invalid, so the Court need not consider it as applied to the respondent. *Id.* at 75–79 (Souter, J., concurring). Justice Thomas would have held that the State lacked a legitimate interest "in second-guessing a fit parent's decisions regarding visitation with third parties." *Id.* at 80 (Thomas, J., concurring). *Troxel's* import, therefore, is limited. It stands for the narrow proposition that Wash. Rev. Code § 26.10.160(3) (1994) is constitutionally infirm as applied in that case. The Court certainly had the opportunity to declare the breathtakingly broad statute unconstitutional on its face, but a majority of the Court failed to take that opportunity. In light of the decision in *Troxel*, Charles fails to explain why this Court should declare the much narrower Idaho statute to be facially unconstitutional. We hold that the district court correctly upheld the facial constitutionality of I.C. § 32-717(3).

**C. I.C. § 32-717(3) is constitutional as applied to Charles.**

Charles' challenge to Section 32-717(3) is both facial and as applied, although his argument fails to clearly distinguish between the two attacks. On the other hand, the Supreme Court was not entirely clear in making that distinction in the *Troxel* opinion.

The *Troxel* plurality did offer some support for Charles' position:

> [S]o long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of the parent to make the best decisions concerning the rearing of that parent's children.
>
> . . .
>
> [I]f a fit parent's decision [involving visitation] becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination.

*Troxel*, 530 U.S. at 68–70. The plurality did discuss "the traditional presumption that a fit parent will act in the best interest of his or her child," and it noted that the Washington court failed to adequately acknowledge that presumption. *Id.* at 69–70. But the plurality would have been satisfied had the Washington court afforded "special weight" to a fit parent's decision. *Id.* at 70. And, read together, the divergent opinions of *Troxel* clearly do not support Charles' constitutional attack on Section 32-717(3).

I.C. § 32-717(3) is obviously distinguishable from Wash. Rev. Code § 26.10.160(3) (1994). The Idaho provision applies only in limited circumstances: when a minor child is actually living with the grandparent in a stable relationship. When Section 32-717(3) does apply, the result is only that the *actual* custodian—*i.e.*, the grandparent—has standing to participate in a custody determination in a divorce action. Section 32-717(3) does not expressly curtail parental rights, and it does not allow anyone and everyone to invoke the court's power to determine custody. The Washington statute, by contrast, provided that *any* person could petition a court for visitation at *any* time. That statute was not limited to actual custodians. Nor was the Washington statute limited to divorce actions. Nor did it even reference the rights of parents.

Moreover, Section 32-717(3) does not conflict with *Troxel's* constitutional basis—the longstanding notion that parents have a liberty interest in raising their children without excessive government interference. We interpret statutes by giving effect to their "plain, obvious, and rational meaning." *State, Dep't of Health and Welfare v. Housel*, 140 Idaho 96, 103, 90 P.3d

6

321, 928 (2004) (internal quotation marks omitted). Section 32-717(3) does not, as Charles contends, "clearly disregard[ ] a parent's fundamental rights . . . because the statute attempts to place parents and grandparents on equal footing without a finding that the parent is unfit." Rather, Section 32-717(3) merely grants an actual custodial grandparent "the same *standing* as a parent for evaluating what custody arrangements are in the best interests of the child" in a divorce action. I.C. § 32-717(3) (emphasis added). Standing is "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary 1536 (9th ed. 2009). Section 32-717(3) does not grant any substantive right and it requires a threshold finding that the child in question "actually resid[es] with the grandparent in a stable relationship."

This Court has, in fact, specifically acknowledged that in the Section 32-717(3) context, a grandparent's right is *not* equal to a parent's fundamental right to raise his or her children. In *Leavitt v. Leavitt*, we noted that "I.C. § 32-717 applies to custody disputes between equal and competing fundamental interests, *with one limited exception* when a grandparent seeks custody 'where the child is actually residing with a grandparent in a stable relationship.'" 142 Idaho 664, 671, 132 P.3d 421, 428 (2006) (quoting I.C. § 32-717(3)) (emphasis added). So, rather than infringing on a parent's right, Section 32-717(3) recognizes that an actual custodial grandparent may help the court determine what custody arrangement is in the best interest of the child in a divorce action.

This reading honors a parent's fundamental interest, and it accommodates two other important, if sometimes competing, interests: "the State's long-recognized interests as *parens patriae* . . . and, critically, the child's own complementary interest in preserving relationships that serve her welfare and protection." *Troxel*, 530 U.S. at 88 (Stevens, J., dissenting). As Justice Stevens pointed out, the U.S. Supreme Court has yet to "elucidate the nature of a child's liberty interest in preserving established familial or family-like bonds." *Id.* But, "the Due Process Clause of the Fourteenth Amendment leaves room for States to consider the impact on a child of possibly arbitrary parental decisions that neither serve nor are motivated by the best interests of the child." *Id.* at 91. It is the State's job, not that of the federal courts, "to assess in the first instance the relative importance of the conflicting interests that give rise to disputes such as this." *Id.*

7

Charles argues that Section 32-717(3) offends the Fourteenth Amendment because it elevates a grandparent's right to that of a parent without a threshold finding of unfitness. Yet, neither the U.S. Supreme Court nor this Court's precedent supports Charles' argument. Nor does the plain language of Section 32-717(3) lend itself to such an understanding. *Troxel* gives *an* instance of when parental decisionmaking may be questioned, *i.e.* where the parent is not fit. *Id.* at 68. *Troxel* does not, however, spell out the only such instance. *See Id.* at 73. The situation contemplated by Section 32-717(3) is certainly one in which the State can direct a court to consider interests other than the biological parents'. Section 32-717(3) applies only to children actually living with a grandparent in a stable relationship, and it is hard to imagine how this could happen without some affirmative choice, or acquiescence, by the parent. It would therefore be unreasonable for us to hold that such a grandparent has no standing to advise a court as what custody arrangements are in the best interests of the children.

The magistrate judge did a remarkable job of applying Section 32-717(3) in this case. The magistrate found that Charles was a fit parent and therefore presumed that Charles' wishes with respect to his children were entitled to great deference. Indeed, the magistrate gave "special weight to the wishes of Charles" and noted "that [Charles] wishes to have primary custody of his children as well as to control when Janice is to exercise custodial time or visitation." The magistrate recognized, however, that Janice proved the children had been living with her in a stable relationship and therefore allowed her to participate in the custody determination pursuant to Section 32-717(3). The magistrate carefully considered the best interests of the children, the fact that they had formed a strong bond with Janice, and the fact that Charles had tried to have a better relationship with them despite some resistance from Janice. After considering at length what would be in the best interest of the children, the magistrate concluded that Charles should have sole legal custody and he should share physical custody with Janice. The magistrate thus gave due regard to Charles' parental rights, but balanced them with the competing interests of the children.

Based on the prior discussion about the limits of *Troxel* and the facial constitutionality of I.C. § 32-717(3), Charles has not demonstrated how the magistrate's findings infringed on his rights. We therefore hold I.C. § 32-717(3) constitutional as applied to Charles.

8

**D. Our *Stockwell* holding is constitutional.**

The magistrate court relied on this Court's opinion in *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989) in determining its custody order and the district court upheld that order based on *Stockwell*. In *Stockwell*, this Court said:

> It is thus clearly established under Idaho precedent, that where a child has been in the custody of a third party for an appreciable period of time (and thereby developed a bond with that person), the custody of the child will be awarded to that party if the best interests of the child so dictate. In this circumstance, neither "a mandatory showing of abandonment nor of patent unfitness" is necessary to overcome a natural parent's right.

*Id.* at 300, 775 P.2d at 614 (quoting *In re Ewing*, 96 Idaho 424, 425–26, 529 P.2d 1296, 1297–98 (1974)) (internal citations omitted).

Charles argues that the *Stockwell* holding was rendered unconstitutional by *Troxel*. As explained previously, *Troxel* is a narrow decision that reaffirmed the right of parents to raise their children without excessive governmental interference and held the Washington statute to infringe upon such right in that case. *Troxel* has no application here. The *Stockwell* holding Charles now challenges allows a court to award custody to a nonparent third party who has acted as the child's actual custodian. *Stockwell* does not require a threshold finding of parental unfitness. The *Stockwell* holding recognizes that a custody grant to a nonparent, with whom the child lives and has established a bond, might be in a child's best interest despite a parent's contrary wishes. As discussed, the Fourteenth Amendment accommodates a State's decision to grant nonparents custody in such cases. *Troxel* did not announce a different interpretation by the U.S. Supreme Court, nor did it hold, as Charles argues, that "unless a parent is unfit, the Court must presume that the parent's decisions regarding the care and custody of the children are in the children's best interest." So, *Troxel* did not impliedly invalidate the *Stockwell* holding. Accordingly, we decline to overrule *Stockwell*.

**E. Charles is not entitled to attorney fees on appeal.**

Charles seeks fees on appeal under I.C. §§ 12-120 and 12-121. Under both sections, this Court may award the prevailing party reasonable fees. Here, Charles has not prevailed and therefore is not entitled to a fee award.

9

## IV.
## CONCLUSION

We affirm the district court's decision upholding the magistrate court's custody order because the district court correctly determined that neither I.C. § 32-717(3) nor the *Stockwell* holding are violative of the Fourteenth Amendment. We award costs on appeal to Janice.

Chief Justice BURDICK, and Justices W. JONES and HORTON CONCUR.

Justice EISMANN, concurring in the result.

The right to liberty includes the fundamental right of parents to direct the upbringing and education of children under their control. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925). The Fourteenth Amendment to the Constitution of the United States provides that no state shall "deprive any person of . . . liberty . . . without due process of law." It recognizes that the right of liberty is not absolute. A state can deprive someone of liberty with due process of law.

Idaho Code section 32-717(3) only applies to divorce actions. *In re Doe*, 148 Idaho 432, 440, 224 P.3d 499, 507 (2009). Janice Ausburn intervened in the divorce action,[2] which was consolidated with the separate action that she filed. Therefore, the statute applies here. It does not grant or diminish any constitutional right. It simply permits the trial court to recognize a grandparent's standing when evaluating custody arrangements when the child is actually residing with that grandparent in a stable relationship.

A parent's right to direct the upbringing and education of children under the parent's control is not absolute. For example, a parent can lose all rights with respect to a child because of the parent's conduct in abusing, neglecting, or abandoning the child.

In *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989), we stated:

> In custody disputes between a "non-parent" (i.e., an individual who is neither legal nor natural parent) and a natural parent, Idaho courts apply a presumption that a natural parent should have custody as opposed to other lineal

---

[2] Because provisions of a divorce decree regarding the care and custody of children can be modified, a divorce action is still pending, even though the divorce had been granted, until the children reach their majority. *Gifford v. Gifford*, 50 Idaho 517, 520, 297 P. 1100, 1101 (1931).

or collateral relatives or interested parties. This presumption operates to preclude consideration of the best interests of the child unless the nonparent demonstrates either that the natural parent has abandoned the child, that the natural parent is unfit or that the child has been in the nonparent's custody for an appreciable period of time.

116 Idaho at 299, 775 P.2d at 613.

After the divorce in Elmore County, Idaho, in September 2000, Charles chose to move to Houston, Texas, and he thereafter did not participate in the rearing of his children. As a result of his failure to assume parental responsibilities, Janice did so. As the magistrate judge found, "For most of their lives Janice has raised and nurtured the boys without physical assistance from either of their parents." That finding is not challenged on appeal. As a result of Charles' conduct, the magistrate judge had the authority to award shared physical custody of the children to Janice if doing so was in their best interests. The magistrate judge found that it is "in the best interest of the boys that Charles and Janice share physical custody," and that finding is not challenged on appeal.

There is nothing in *Troxel v. Granville*, 530 U.S. 57 (2000), that impacts this case because of the differences between the Washington statute and Idaho's statutory law and case law. Therefore, I agree to affirm the judgment of the district court, which affirmed the order of the magistrate court.