IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 40995

| STATE OF IDAHO, | ) | 2014 Opinion No. 27 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 1, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| NIKOLAS LEE SHERMAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge. Hon. James Stow, Magistrate.

Order of the district court affirming the magistrate's denial of motion to dismiss, affirmed.

John M. Adams, Kootenai County Public Defender; Jay Logsdon, Deputy Public Defender, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Nikolas Lee Sherman appeals from the district court's appellate decision affirming the magistrate's order denying his motion to dismiss and refusing his requested jury instruction. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A resident contacted police after finding an intoxicated male on his property. When a police officer arrived at the property, the intoxicated male attempted to flee and was restrained by the officer. The individual was identified as Sherman and the officer found two prescription drug bottles in Sherman's pockets, one bottle prescribed to Sherman and one bottle prescribed to Mr. Gallegos. Sherman initially told the officer that he was holding the prescription drugs for a female friend. The police officer arrested Sherman and transported him to the police station,

1

where Sherman changed his story and told the officer he was holding the prescription drugs for a friend named Mr. Wilhelm. The officer returned the prescription drug bottle to Mr. Gallegos. The prescription drugs may have been in Mr. Gallegos' vehicle which was parked outside his home and left unlocked. The officer located Sherman's vehicle near Mr. Gallegos' home and was informed that Sherman had been seen in the area prior to the officer's arrival.

Sherman was charged with the unlawful possession of a prescription drug, Idaho Code § 54-1732(3)(c). He filed a motion to dismiss, claiming that I.C. § 54-1732(3)(c) violated his substantive due process rights both on its face and as applied to him. The magistrate denied Sherman's motion to dismiss. Sherman filed a motion to reconsider the magistrate's decision. The magistrate declined to revisit its prior ruling, but invited argument on an issue involving the jury instructions. Specifically, Sherman requested that the court provide an instruction regarding the warehousemen exception to unlawful possession of prescription drugs found in I.C. § 54-1734(2)(f). After argument, the magistrate declined Sherman's request to provide the instruction.

Thereafter, Sherman entered a conditional guilty plea, pursuant to Idaho Criminal Rule 11, to the unlawful possession of a prescription drug. The magistrate imposed a term of 180 days in jail with 174 days suspended, with Sherman to serve sixteen hours in the sheriff's labor program in lieu of six days in jail. The magistrate also imposed a two-year term of unsupervised probation and imposed a fine. Sherman's sentence was stayed pending his appeal.

Sherman appealed to the district court. The district court, in its intermediate appellate capacity, affirmed the magistrate's denial of Sherman's motion to dismiss and the magistrate's denial of Sherman's proposed jury instruction. Sherman timely appeals.

## II.

## ANALYSIS

Sherman claims that I.C. § 54-1732(3)(c) is unconstitutional on its face and as applied to him. He also contends that the district court erred in affirming the magistrate's decision to deny his proposed instruction informing the jury of the warehousemen exception to the statute.[1] When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

---

[1] Sherman withdrew his challenge to the proposed jury instruction at oral argument; therefore, we need not address it.

2

The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## A. Constitutionality

The United States and Idaho Constitutions protect against State deprivation of a person's "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; Idaho CONST. art. 1, § 13; *Idaho Dairymen's Ass'n, Inc. v. Gooding County*, 148 Idaho 653, 661, 227 P.3d 907, 915 (2010). In order for a defendant to prevail on a substantive due process claim, the State action that deprived the defendant of life, liberty, or property must be arbitrary, capricious, or without a rational basis. *Idaho Dairymen*, 148 Idaho at 661, 227 P.3d at 915. A substantive due process violation will not be found if the State action "bears a reasonable relationship to a permissible legislative objective." *Id.*

Constitutional questions are questions of law over which we exercise free review. *Hernandez v. Hernandez*, 151 Idaho 882, 884, 265 P.3d 495, 497 (2011). This Court presumes the constitutionality of challenged statutes and we are obliged to seek an interpretation of the statute that upholds its constitutionality. *Id.* The party challenging the statute bears the burden of proving the statute unconstitutional. *Id.* "A party may challenge a statute as unconstitutional 'on its face' or 'as applied' to the party's conduct." *American Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 870, 154 P.3d 433, 441 (2007) (quoting *State v. Korsen*, 138 Idaho 706, 712, 69 P.3d 126, 132 (2003)).

### 1. Facial constitutional challenge

Sherman filed a motion to dismiss with the magistrate court, claiming that I.C. § 54-1732(3)(c) was facially unconstitutional. The magistrate denied the motion, finding that the State had a rational basis for regulating the possession of controlled substances. The district

3

court, in its intermediate appellate capacity, determined that the statute could be constitutionally applied and thus, was not facially unconstitutional. Specifically, the district court stated that the statute was not vague because it addressed specific conduct and that the statute did not infringe upon a fundamental right.

A facial challenge to a statute is purely a question of law. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). Generally, a facial challenge is mutually exclusive from an as applied challenge. *American Falls*, 143 Idaho at 870, 154 P.3d at 441. The United States Supreme Court has debated the appropriate standard to be applied to facial challenges to state statutes.[2] In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court stated that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745.[3] In a later case, Justice Stevens stated that the Supreme Court had never actually applied the strict *Salerno* standard and noted that *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), applied a significantly lesser standard providing that a statute would be invalidated if the overbreadth of the statute was real and substantial in relation to the statute's plainly legitimate sweep. *Washington v. Glucksberg*, 521 U.S. 702, 740

---

[2] Additionally, the United States Supreme Court has expressed caution about determining the constitutionality of statutes in the context of facial challenges. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (stating that facial challenges are disfavored for several reasons, including that facial challenges raise the risk of premature interpretation of statutes and threaten to short circuit the democratic process by preventing duly-enacted laws from being implemented in a constitutional manner).

[3] Sherman claims that the standard articulated in *United States v. Salerno*, 481 U.S. 739 (1987), only applies in the civil context. Sherman asserts that *Salerno* specifically stated that the standard did not apply to statutes that criminalize behavior but only to statutes that regulate state functions. We find no such limitation in the *Salerno* opinion. In that case, Salerno argued that the Bail Reform Act of 1984 violated his substantive due process because the pretrial detention authorized by the Act constituted impermissible punishment before trial. As an initial matter, the Supreme Court determined that the statutory scheme authorizing pretrial detention was a regulatory function and not a punitive function. The Supreme Court then stated that the government's interest in preventing crime by arrestees is both legitimate and compelling. Accordingly, the Court found that the Act was not facially invalid under the Due Process Clause. *Salerno*, 481 U.S. at 752. In so holding, the Court never articulated that the enunciated standard only applied in non-criminal matters. We do recognize that substantive due process challenges typically occur in the civil context, but we are not convinced that the *Salerno* standard applies exclusively in the civil realm.

n.7 (1997) (Stevens, J., concurring) (citing *Broadrick*, 413 U.S. at 615). The United States Supreme Court again recognized the different standards applicable to substantive due process challenges in *United States v. Stevens*, 559 U.S. 460 (2010). In that case, the Court stated:

> To succeed in a typical facial attack, Stevens would have to establish that no set of circumstances exists under which [§ 48] would be valid, or that the statute lacks any plainly legitimate sweep. Which standard applies in a typical case is a matter of dispute that we need not and do not address . . . .

*Stevens*, 559 U.S. at 472 (citations omitted) (quotations omitted).

Idaho Appellate Courts have also applied different standards for facially unconstitutional challenges. In *Hernandez*, 151 Idaho at 884, 264 P.3d at 497, the Idaho Supreme Court stated, "To succeed on a facial challenge, one must demonstrate that under no circumstances is the statute valid." *Id.* The Idaho Supreme Court has also applied the rational basis test in determining if a statute violated the substantive due process clause. In *State v. Bennett*, 142 Idaho 166, 125 P.3d 522 (2005), the Supreme Court said:

> Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a "clear showing of arbitrariness and irrationality." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). Moreover, in a substantive due process challenge, we do not require that the [government's] legislative acts actually advance its stated purposes, but instead look to whether "the governmental body *could* have had no legitimate reason for its decision." *Id.* Additionally, "[i]f it is 'at least fairly debatable' that the [government's] conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir. 1994) (quoting *Kawaoka*, 17 F.3d at 1234).

*Bennett*, 142 Idaho at 169, 125 P.3d at 525.

On appeal, Sherman contends that I.C. § 54-1732(3)(c) is violative of substantive due process because the law is irrational and arbitrary in its scope. Idaho Code § 54-1732(3)(c) provides:

> (3)     The following acts, or the failure to act, and the causing of any such act or failure are unlawful:
>
>         . . . .
>
>         (c)     The possession or use of a legend drug or a precursor by any person unless such person obtains such drug on the prescription or drug order of a practitioner.

5

Pursuant to I.C. § 54-1734(2), pharmacists, practitioners, hospitals, manufacturers, wholesalers, carriers, and warehousemen are exempt from the crime of possession of a legend drug in the usual and lawful course of their business.

Sherman argues that the statute is arbitrary because it criminalizes the possession of prescription drugs[4] unless the drugs were prescribed specifically to the person in possession.[5] According to Sherman, the statute criminalizes ordinary everyday actions, such as a person getting prescription drugs for a spouse or dependent. Sherman also claims that the law is unconstitutional because it infringes upon a parent's right to care for a sick child by prohibiting the parent from getting medication from the pharmacy that is prescribed to the child. Thus, Sherman asserts that limiting the legal possession of prescription drugs to the individual prescribed is irrational.

The State claims that the legislature created the statute with the permissible objective of promoting and protecting the public health and welfare. The State asserts that the statute mitigates the potential for prescription drug misuse and abuse. Thus, the State argues that Sherman is unable to demonstrate that the statute is facially unconstitutional. Additionally, the State points out that "prescription drug order" was, at the time of Sherman's arrest, defined as "a lawful written or verbal order of a practitioner for a drug or device for an *ultimate user* of the

---

[4]      Legend drug is defined synonymously with prescription drug.

[5]      Sherman points to *Smith v. Costello*, 77 Idaho 205, 290 P.2d 742 (1955) *superseded by statute*, I.C. § 6-611, as an example of an arbitrary law being held unconstitutional. In *Smith*, a conservation officer shot and killed a dog and claimed former I.C. § 37-1407 as an affirmative defense. Idaho Code § 37-1407 provided that "any dog running at large in territory inhabited by deer, is hereby declared to be a public nuisance and may be killed at such time by any game conservation officer . . . ." The Idaho Supreme Court stated that the phrase "territory inhabited by deer" could refer to the majority of the state, including farmland. This could make any farmer's dog a public nuisance and at risk of being shot by a conservation officer. Accordingly, the Court held that the statute was an "arbitrary, unreasonable and unconstitutional regulation." *Smith*, 77 Idaho at 209, 290 P.2d at 744. Based on *Smith*, Sherman argues that I.C. § 54-1732(3)(c) must be found to be arbitrary unless that State can show that the population of Idaho is so disposed as to misuse and abuse any medication which it possesses. Sherman misconstrues the applicable standard. A law is arbitrary if the law bears no substantial relationship to the health, safety, morals, and general welfare of the public. *Dry Creek Partners, LLC v. Ada County Comm'rs, ex rel. State*, 148 Idaho 11, 19, 217 P.3d 1282, 1290 (2009).

drug or device, issued and signed by the practitioner." I.C. § 54-1705(32) (emphasis added).[6] Based on the phrase "ultimate user," the State claims that a person may lawfully pick up a prescribed medication at a pharmacy for another, such as a spouse or child.

We conclude that the district court did not err in affirming the magistrate's decision to deny Sherman's motion to dismiss. Even applying the lesser substantive due process standard, we conclude that I.C. § 54-1732(3)(c) is not facially unconstitutional.

The statute is reasonably related to the State's legitimate interest of stopping the abuse and misuse of prescription drugs. The Idaho Supreme Court has stated that the legislature may enact laws concerning the health, safety, and welfare of the people: "The State legislature, under the broad concept of police power, may enact laws concerning the health, safety and welfare of the people so long as the regulations are not arbitrary or unreasonable." *Van Orden v. State, Dep't of Health and Welfare*, 102 Idaho 663, 667, 637 P.2d 1159, 1163 (1981). A law is arbitrary if the law bears no substantial relationship to the health, safety, morals, and general welfare of the public. *Dry Creek Partners, LLC v. Ada County Comm'rs, ex rel. State*, 148 Idaho 11, 19, 217 P.3d 1282, 1290 (2009).

Idaho's legislature recognized the need to regulate the use, possession, manufacture, and distribution of prescription drugs when it enacted the Idaho Pharmacy Act, I.C. §§ 54-1701 to 54-1771. In its statement of purpose, the legislature stated, "It is the purpose of this act to promote, preserve and protect the health, safety and welfare of the public by and through the effective control and regulation of the practice of pharmacy . . . ." I.C. § 54-1703. Idaho Code § 54-1732(3)(c) directly relates to the legislative purpose by criminalizing an act that the legislature determined to be detrimental to public health and welfare. Limiting the possession of prescription drugs to those who are authorized to manufacture and distribute drugs, and to those who are lawfully prescribed drugs, mitigates the potential for individuals to misuse or abuse

---

[6]     In 2013, Idaho Code § 54-1705(32) was recodified as I.C. § 54-1705(36) and amended to state, "'Prescription drug order' means a valid order of a practitioner for a drug or device for an ultimate user of the drug or device."

prescription drugs.[7]  Accordingly, the State had a legitimate interest and a rational basis for enacting the statute.

Sherman concedes that the State has a legitimate interest in stopping the misuse and abuse of prescription drugs.  However, he claims I.C. § 54-1732(3)(c) is absurd because the State has no legitimate interest in preventing caregiving and ordinary everyday actions.[8]  Even applying the lesser substantive due process standard, we conclude that any overbreadth of the statute is not substantial in relation to the rational and legitimate interest the State had in enacting the statute.

In addition, we do not read the statute as broadly as Sherman contends.  Sherman argues that pursuant to the plain language of the statute, nearly every Idaho citizen will at some point commit a misdemeanor by possessing another person's prescription medication.  This Court exercises free review over the application and construction of statutes.  *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003).  Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction.  *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000).  The words must be given their plain, usual,

---

[7]    Prescription drug abuse has been recognized throughout the country as an act detrimental to the public health, safety, and welfare:

> Prescription drug abuse is the fastest growing drug problem in the United States.  Although public perception sees prescription medications as inherently safer than illicit street drugs, prescription opioids caused 14,800 deaths in 2008, which is more than cocaine and heroin combined.  Prescription drug abuse is even more prevalent than most illicit drug use, and prescription drug-related deaths have increased over 300-fold from 1999 to 2008.

Michael C. Barnes & Gretchen Arndt, *The Best of Both Worlds:  Applying Federal Commerce and State Police Powers to Reduce Prescription Drug Abuse*, 16 J. HEALTH CARE L. & POL'Y 271, 271-72 (2013).

[8]    Sherman also contends that I.C. § 54-1732(3)(c) is unconstitutional because it violates a parent's right to raise children by criminalizing the act of administering prescription drugs to a child.  He also claims that it is absurd to criminalize those administering medication to family members, but give immunity to warehouse workers who could be just as likely to abuse prescription drugs.  Nonetheless, the statute bears a reasonable relation to a legitimate state interest; thus, Sherman's facial constitutional challenge fails.

and ordinary meaning, and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001).

Idaho Code § 54-1732(3)(c) criminalizes the possession of prescription drugs by any person unless such person obtains the drugs *on the prescription or drug order* of a practitioner. At the time of Sherman's arrest, "prescription drug order" was defined, in relevant part, in I.C. § 54-1705(32) as a "lawful written or verbal order of a practitioner for a drug or device for an ultimate user of the drug or device, issued and signed by a practitioner." The term "ultimate user" is not defined in Title 54.[9] However, the plain and ordinary meaning of the term "ultimate user" is the person intended, through the prescription, to use the drug. Thus, I.C. § 54-1732(3)(c) does not criminalize a person who, by presentation to a pharmacist of a prescription, obtains a prescription medication for the final person authorized to use the medication. Accordingly, many of the scenarios Sherman suggests would be criminal--such as picking up prescription medications for a grandparent, spouse, or child--are not criminalized by the plain language of the statute. As a result, any overbreadth of the statute is not constitutionally substantial.

Therefore, the magistrate did not err in denying Sherman's motion to dismiss based on his facially unconstitutional challenge and the district court properly affirmed the magistrate's decision.

### 2. As applied constitutional challenge

In order for Sherman to prevail in his as applied challenge, he must demonstrate that the statute is unconstitutional as applied in his specific instance. *Hernandez*, 151 Idaho at 884, 265 P.3d at 497. Sherman contends that I.C. § 54-1732(3)(c) is unconstitutional as applied because the statute criminalized his asserted non-criminal conduct of storing medication for his friend.

---

[9] Idaho Code § 37-2701(ee) defines "ultimate user" as "a person who lawfully possesses a controlled substance for his own use or for the use of a member of his household or for administering to an animal owned by him or by a member of his household." We recognize that statutory definitions "provided in one act do not apply 'for all purposes and in all contexts but generally only establish what they mean where they appear in that same act.'" *State v. Yzaguirre*, 144 Idaho 471, 477, 163 P.3d 1183, 1189 (2007) (quoting *Maguire v. Yanke*, 99 Idaho 829, 836, 590 P.2d 85, 92 (1978). Nonetheless, the common meaning of "ultimate" is "last in a progression or series; final" or "original." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 10 Mar. 2014. http://www.merriam-webster.com/dictionary/ultimate. Further, "user" is defined as "a person or thing that uses something." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 10 Mar. 2014. http://www.merriam-webster.com/dictionary/user. Based on these definitions, the term "ultimate user" is the person who was intended to use the prescription drug.

Sherman argues that his conduct was not reasonably related to the objectives of the statute, and therefore to criminalize his asserted non-criminal conduct would be unconstitutional. Sherman also contends that his role of storing the prescription drugs is similar to the role of a warehouseman who stores prescription drugs prior to distribution. He argues that there is no rational basis to exempt warehousemen from criminal liability, and yet punish him for performing the same task that warehousemen perform. The State claims that the statute's regulation of prescription medication possession is reasonably related to the State's legitimate interest in promoting and protecting public health and welfare and applied here to clearly criminal conduct.

The only evidence submitted to the magistrate at the hearing for Sherman's motion to dismiss was a police report detailing the facts of Sherman's arrest. The police report stated that upon arrival at the location, the police officer found an intoxicated male who identified himself as Wilhelm. He attempted to flee and was detained by the officer. The officer asked him if he had anything in his pockets and he stated that he had one of his female friend's prescription drug bottles on him. He stated that the female friend left the prescription drug bottle with him earlier that day. The officer removed two prescription drug bottles, one prescribed to Mr. Gallegos and one prescribed to Sherman. The officer removed the male's wallet and identified him as Sherman. Sherman then changed his story and told the officer that a male named Wilhelm left the prescription bottle in his car. The officer arrested Sherman and contacted Mr. Gallegos. Mr. Gallegos reported that his vehicle was left outside unlocked; but was not certain if the prescription drug bottle was left inside the vehicle. The officer returned the prescription drug bottle to Mr. Gallegos. The officer also discovered Sherman's vehicle parked near Mr. Gallegos' residence and a neighbor informed the officer that Sherman was in the area prior to the officer's arrival. At the police station, Sherman again altered his account, stating that he was playing Frisbee golf with Wilhelm earlier in the day and Wilhelm asked him to hold the prescription drug bottle because he did not have any pockets. Sherman also denied parking his car near Mr. Gallegos' residence.

At the hearing on Sherman's motion to dismiss, the magistrate found that the reasonable conclusion from the facts in the police report was that Sherman "improperly acquired" the drugs and that Sherman had "in fact stolen the prescription bottle" from Mr. Gallegos' vehicle or residence. The magistrate arrived at this conclusion based on the police report and the

10

"connective facts," such as Sherman referencing that the prescription bottle belonged to a female when a male's name was on the label, and then Sherman changing his story and claiming that the bottle belonged to Wilhelm, which still did not match the label on the bottle. Additionally, Sherman never indicated that the bottle was given to him by Mr. Gallegos. Therefore, the magistrate stated that the facts of the case were not that Sherman was storing the prescription medication for another, but that Sherman stole the bottle from Mr. Gallegos.[10] Accordingly, the magistrate found that the statute was not unconstitutional as applied and denied Sherman's motion to dismiss. The district court affirmed the magistrate's decision.

Substantial evidence supports the magistrate's finding that Sherman was not simply storing the prescription drugs for a friend. Sherman's contradicting accounts, his vehicle's location, Mr. Gallegos' statements, and the neighbor identifying Sherman as being near Mr. Gallegos' residence indicates that Sherman, at the very least, did not come into possession of Mr. Gallegos' prescription drug bottle through a friend while playing Frisbee golf. Accordingly, Sherman's argument that I.C. § 54-1732(3)(c) was unconstitutional as applied to him because he was simply storing the drugs for a friend is belied by the record. Certainly, the legislature has a rational basis to regulate the unauthorized and unlawful possession of prescription drugs in order to prevent the abuse and misuse of prescription drugs. Therefore, the district court did not err in affirming the magistrate's decision to deny Sherman's motion to dismiss based on his as applied constitutional challenge.

## III.

## CONCLUSION

Sherman has failed to demonstrate reversible error. The magistrate properly denied Sherman's motion to dismiss. Accordingly, the district court's order affirming the magistrate's decision is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**

---

[10] By presenting his motion, based upon the police report, Sherman called upon the magistrate to resolve the issues of fact concerning how Sherman acquired the drugs. He has not claimed below or on appeal that these factual issues were for resolution by a jury.