# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44419

| | | |
|---|---|---|
| JANE DOE (2016-34), | ) | |
| | ) | |
| Petitioner-Respondent-<br>Cross Appellant, | ) ) | Boise, January 2017 Term |
| v. | ) | 2017 Opinion No. 60 |
| | ) | |
| JANE DOE I, | ) | Filed: June 7, 2017 |
| | ) | |
| Respondent-Appellant-<br>Cross Respondent. | ) ) | Stephen W. Kenyon, Clerk |
| _____ | ) | |

Appeal from the Magistrate Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Diane Walker, Magistrate Judge.

The judgment of the magistrate court is affirmed in part and reversed in part.

Cosho Humphrey LLP, Boise, for appellant. Stanley Welsh argued.

The Law Offices of J. Scott Escujuri, PLLC, Boise; Emily Haan, San Francisco, CA; Ferguson Durham, PLLC, Boise, for respondent. Emily Haan argued.

_____

BRODY, Justice.

This case requires us to resolve a custody dispute between Jane Doe I, Child's natural mother, and Jane Doe, the natural mother's former partner. During the course of Mother and Partner's relationship, Mother conceived a child via artificial insemination. After the parties separated, Partner filed a petition to establish parentage, custody and visitation with Child. Partner advanced two legal arguments to support her petition. First, she argued this Court's decision in *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989), provides an independent cause of action by which the court may grant custody to Partner. Second, she argues that she should be deemed a parent under Idaho Code section 39-5405, Idaho's artificial insemination statute, because she consented to the artificial insemination. As part of this argument, Partner contends that Idaho's artificial insemination statute violates Child's rights and her rights under the Equal Protection Clause of the United States Constitution by discriminating against children born outside of marriage. The magistrate court denied Partner's claim for parentage, but granted

her visitation rights under *Stockwell*. Mother and Partner cross-appealed the magistrate court's decision.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Partner were involved in a committed relationship from 2006 until 2012. The two did not marry because Mother did not want the legal commitment to Partner. Although not married, Mother and Partner jointly agreed to start a family using an anonymous sperm donor. Mother planned to have a child regardless of whether Partner participated, and Mother wanted Child to be biologically related to her.

Partner was involved with the artificial insemination process. Before Child's birth, Mother and Partner consulted with an attorney regarding Partner adopting Child, but they were discouraged from adoption proceedings because the attorney believed that same-sex couples were prohibited from pursuing adoptions, although they were instructed that no law exists prohibiting same-sex adoptions. This consultation took place before this Court's decision in *In Re Adoption of Doe*, 156 Idaho 345, 326 P.3d 347 (2014), wherein we ruled that Idaho's adoption statute does not prohibit an unmarried woman from adopting her domestic partner's children. Mother and Partner did not pursue adoption.

Throughout the pregnancy Partner attended prenatal appointments and was present during the birth. From February 2010 until June 2012, Mother and Partner coordinated their work schedules to care for Child and lived as a family. Mother and Partner's relationship deteriorated in 2012, and Partner moved out of the home. Partner did not attempt to have custody of Child, or take her with her when she moved out. Throughout the summer of 2012, Partner cared for Child when Mother was at work. Gradually, the time Partner spent caring for Child decreased. In January 2015, Mother prohibited Partner from contacting Child and rejected Partner's financial support. Mother told Partner that Mother was the biological parent, and that Partner had no legal rights to Child.

Partner filed a Petition for Adoption, Guardianship, and Visitation in the magistrate court. Partner dismissed her adoption claim because Mother would not consent to it. Partner filed an Amended Petition to Establish Parentage, De Facto Parentage, and Custody and Visitation. Mother filed a motion to dismiss. The magistrate court dismissed the claim involving the parentage claim under Idaho's artificial insemination statute, but allowed the independent

*Stockwell* claim for custody to proceed to trial. After the trial, the magistrate court granted Mother sole legal custody and primary physical custody of Child. It also granted Partner visitation rights. The magistrate court stayed the judgment, kept a temporary visitation order in place, and granted permission to seek an expedited appeal of the judgment to this Court. This Court granted the parties' expedited cross-appeals.

## II.
## ISSUES PRESENTED ON APPEAL

1.      Whether the magistrate court erred in construing *Stockwell* to create a cause of action for a non-parent seeking custodial rights to a minor child.

2.      Whether the magistrate court erred in dismissing Jane Doe's claim that she is a legal parent pursuant to Idaho's artificial insemination statute.

## III.
## STANDARD OF REVIEW

"This [C]ourt exercises free review over the lower court's conclusions of law." *Barry v. Pac. W. Constr., Inc.*, 140 Idaho 827, 831, 103 P.3d 440, 444 (2004). "'Jurisdictional issues, such as standing, are questions of law,' over which this Court exercises free review." *In re Adoption of Doe*, 156 Idaho 345, 348, 326 P.3d 347, 350 (2014) (quoting *Martin v. Camas Cty. ex rel. Bd. Comm'rs*, 150 Idaho 508, 512, 248 P.3d 1243, 1247 (2011)). This Court also "exercises free review when interpreting the meaning of a statute." *Id.*

## IV.
## ANALYSIS

A.      **The *Stockwell* decision does not create an independent cause of action for a non-parent seeking custodial rights to a minor child.**

Partner filed what has been dubbed as a "*Stockwell* petition" based on this Court's decision in *Stockwell v. Stockwell*, 116 Idaho 297, 775 P.2d 611 (1989). Partner argues that *Stockwell* created a common law cause of action enabling non-parents (Partner uses the term "de facto parent") to seek custody of children. Mother contends that Partner's *Stockwell* petition is unprecedented, and, if granted, will open the door to third party custody claims outside the statutory frameworks passed by the Idaho legislature. We agree with Mother, and find that the magistrate court erred when it granted Partner visitation rights.

*Stockwell* involved a complicated custody dispute that arose after a divorce. Prior to the Stockwell's wedding, Patricia Stockwell gave birth to a child named Amber. 116 Idaho at 298, 775 P.2d at 612. Dan Stockwell was not the biological father of the child, even though his name

was placed on her birth certificate. *Id*. During the course of the marriage, Dan established a parental relationship with Amber. *Id*. He was the only father she ever knew. *Id.* at 300, 775 P.2d at 614. The Stockwells divorced when Amber was about nine years old. By that time, the Stockwells also had another child. During the divorce, the Stockwells agreed to place both girls under the guardianship of Dan's parents. *Id.* at 298, 775 P.2d at 612. The divorce decree did not otherwise address the care, custody, or support of the children. *Id*. About a year later, Patricia moved to terminate the grandparents' guardianship. *Id.* The magistrate court granted the motion to terminate and awarded Patricia custody of both children. *Id*. Dan was granted visitation rights, but when he pressed for those rights, Patricia fled Idaho with the girls and her new husband. *Id*. at 298–99, 775 P.2d at 612–13. After Patricia fled the state, the magistrate court entered another order finding that Patricia's conduct warranted a change of custody. *Id*. at 299, 775 P.2d at 613. The magistrate court awarded custody of the biological child to Dan, but declined to award him custody of Amber. *Id*. The magistrate court did, however, award Dan visitation rights. Amber stayed in Dan's custody while he appealed the decision. *Id*.

The *Stockwell* case made its way to this Court. This Court held: "[i]n custody disputes between a 'non-parent' (i.e., an individual who is neither legal nor natural parent) and a natural parent, Idaho courts apply a presumption that a natural parent should have custody as opposed to other lineal or collateral relatives or interested parties." *Id.* The Court held further:

> This presumption operates to preclude consideration of the best interests of the child unless the nonparent demonstrates either that the natural parent has abandoned the child, that the natural parent is unfit or that the child has been in the nonparent's custody for an appreciable period of time.

*Id.* If the child has been in the non-parent's custody for an "appreciable period of time," then the court must decide what placement is in the best interests of the child. For Amber Stockwell, it meant being placed with her step-father.

This Court's decision in *Stockwell* is not a key to the courthouse for non-parents seeking custody of minor children. The *Stockwell* decision was made in the context of divorce and guardianship proceedings and cannot be used as a toe-hold for an independent custody action brought by a non-parent. This Court understands that family structures are changing, but it is not the role of this Court to create new legal relations. That is the business of the Idaho legislature.

This Court recently explained this point in a case involving a surrogate mother and "intended parents." *In the Matter of Doe*, 160 Idaho 360, 372 P.3d 1106 (2016). In *Doe*, a

surrogate mother and her husband filed a declaratory judgment action to have the "intended parents" with whom she contracted declared as the legal parents of the child she carried. They brought the action so that the intended parents' names could be placed on the birth certificate and no adoption proceeding would be required. This Court declined to grant the declaration, holding that Idaho's declaratory judgment action statute does not give the Court the power to create new legal relationships. This Court explained:

> Although the parties are correct that as a procedural matter Idaho Code section 10-1201, et. seq. does allow courts to declare legal relations, that power is inherently limited to the interpretation of previously established substantive law. Idaho Code section 10-1201, et. seq. does not give this Court, or any other Idaho court, the power to create law. "The legislature and the legislature only, under our constitution, has power to legislate." *Thomas v. Riggs*, 67 Idaho, 223, 228, 175 P.2d 404, 407 (1946). Where the legislature has not seen fit to provide substantive legal grounds on which a court can base a requested declaration, then it is outside of the authority of that court to make said declaration, even when it would further the interests of all parties involved (as here).

160 Idaho at 362, 372 P.3d at 1109.

The Idaho legislature has adopted legislation enabling non-parents to seek custody of children. The keys to the courthouse are varied: Idaho Code section 32-1701 et. seq. (De Facto Custodian Act enabling relatives related to a child within the third degree of consanguinity to seek custody); Idaho Code section 32-717(3) (enabling grandparents to intervene in divorce case where the child actually resides with grandparent); Idaho Code section 32-719 (enabling grandparents and great-grandparents to seek visitation); Idaho Code section 15-5-204 (guardianship proceeding authorized where child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment). At this point in time, the legislature has not adopted a statutory framework that would enable Partner to seek custody or visitation under the circumstances of this case.

Mother made the decision to terminate the relationship between Child and Partner. She had that right, and while there may be a temptation to second-guess that decision, courts cannot do so. Parents have a constitutional right to care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054 (2000); *Leavitt v. Leavitt*, 142 Idaho 664, 670, 132 P.3d 421, 427 (2006). The Supreme Court of the United States has observed, "The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."

*Troxel*, 530 U.S. at 66.The magistrate court erred when it extended *Stockwell* to award visitation to Partner. We reverse the magistrate court's judgment.

**B.     The magistrate court properly dismissed the parentage claims based on Idaho's Artificial Insemination Act.**

Partner contends that she is Child's parent pursuant to Idaho Code section 39-5405 because she consented to Mother's artificial insemination. Section 39-5405 establishes the respective rights of a semen donor, resulting child, and the mother's husband. Under this provision, the semen donor has no rights or obligations with respect to a child who is conceived through artificial insemination. Likewise, the child has no rights or obligations with respect to the semen donor. If the mother is married, and the husband has consented to artificial insemination, then the husband and resulting child have the same rights and obligations with respect to each other as if the child had been conceived naturally by the mother and husband. The statute states:

(1) The donor shall have no right, obligation or interest with respect to a child born as a result of the artificial insemination.
(2) A child born as a result of artificial insemination shall have no right, obligation or interest with respect to such donor.
(3) ***The relationship, rights and obligation between a child born as a result of artificial insemination and the mother's husband shall be the same for all legal intents and purposes as if the child had been naturally and legitimately conceived by the mother and the mother's husband, if the husband consented to the performance of artificial insemination.***

I.C. § 39-5405 (emphasis added). The plain language of the statute simply does not address a situation like at issue here where a child is conceived through artificial insemination by an unmarried couple.

The magistrate court dismissed Partner's claim of parentage based on this statute because Mother and Partner were not married. Partner contends that section 39-5405(3) as applied to her and Child violates the Equal Protection Clause of the United States Constitution by discriminating against non-marital children. We find Partner does not have standing to raise Child's claim.

It is well understood that a person wishing to invoke a court's jurisdiction must have standing. *Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000). Standing is a threshold issue that must be decided before reaching the merits of the case. *Miles v. Idaho Power Co.*, 116 Idaho 635, 637, 778 P.2d 757, 759 (1989). The doctrine of

standing is a subcategory of justiciability. *Id.* at 639, 778 P.2d at 761. To be sure, the doctrine is imprecise and difficult to apply. *Id.* at 641, 778 P.2d at 763 (citing *Valley Forge College v. Americans United*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). It is even more difficult in a case such as this where the party bringing the claim seeks to assert the rights of another person.

This Court has explained that there are three interrelated criteria for a party to assert the constitutional rights of another person:

> (1) [s]he must have suffered injury in fact, providing a significantly concrete interest in the outcome of the matter in dispute; (2) [s]he must have a sufficiently close relationship to the party whose rights [s]he is asserting; and (3) there must be a demonstrated bar to the third parties' ability to protect their interests.

*Shepherd v. Shepherd*, 161 Idaho 14, 19, 383 P.3d 693, 699 (2016). "Courts hesitate before resolving the rights of those not parties to litigation." *Id*. at 20, 383 P.3d at 698. "Even though a potentially illegal action may affect the litigant as well as a third party, the litigant may not rest his claims on the rights or legal interests of the third party." *Id*. Standing focuses on the party seeking relief and not on the issues the party wishes to have adjudicated. *Van Valkenburgh*, 135 Idaho at 124, 15 P.3d at 1132; *Boundary Backpackers v. Boundary Cty.*, 128 Idaho 371, 375, 913 P.2d 1141, 1145 (1996) (quoting *Miles*, 116 Idaho at 639, 778 P.2d at 761).

In this case, Partner lacks standing because she cannot satisfy the second prong of the criteria articulated in *Shepherd*. Partner does not have a legally recognized, protected relationship with Child. She is not related to Child by blood or by marriage. She did not adopt Child at the time of her birth, and Mother has since refused to consent to the adoption. She is not the guardian of Child, and there is no Idaho statute which authorizes Partner to direct the care, custody or control of Child in any way. The whole purpose of Partner's constitutional challenge is to obtain the legal status that would enable her to raise Child's claim in the first place. Without first having a legally recognized, protected relationship, she cannot assert Child's constitutional claim.

Partner's position is further complicated by Mother's constitutional interests, which we must also consider. As stated previously, Mother has a recognized constitutional right to direct the care, custody, and control of Child. *Troxel*, 530 U.S. at 66; *Leavitt v. Leavitt*, 142 Idaho 664, 670, 132 P.3d 421, 427 (2006). Mother has made the decision not to assert Child's constitutional claim. If we were to allow Partner to assert Child's claim without a legally protected relationship, we would be undermining Mother's constitutional rights. This we will not do.

Partner also argues that she has her own constitutional claim. She cites *Stanley v. Illinois*, 405 U.S. 645, 652 (1972), to support her position. *Stanley* involved a challenge to an Illinois statute which declared children wards of the state upon the death of their unmarried mother. Peter Stanley and Joan Stanley lived together on and off over a period of eighteen years. They had three children together. When Joan passed away, the couple's three children were declared wards of the state simply by virtue of their mother's death. The state took the position that unwed fathers were presumptively unfit parents. Peter challenged the constitutionality of the statute, arguing that he was denied due process of law. The Supreme Court of the United States agreed with him, holding that Peter was entitled to a hearing to determine whether he was a fit parent, and that by failing to hold such a hearing and granting such a hearing to other parents before their children were removed from their custody, deprived him of the equal protection of the laws guaranteed by the Fourteenth Amendment.

Partner's reliance on *Stanley* is misplaced. Peter's equal protection claim was based on the state's failure to grant *him* equal protection of the laws—not the children. In this case, the equal protection claim has been framed as discrimination against Child. To the extent such a claim exists, it belongs to Child and the only proper party who can raise that claim at this time is Mother. As such, we hold that the magistrate court did not err in dismissing Partner's claim.

## V.
## CONCLUSION

The judgment of the magistrate court is reversed in part and affirmed in part. We remand this matter to the magistrate court to vacate the temporary visitation order that was entered. Costs on appeal to Jane Doe I.


Chief Justice BURDICK, and Justices EISMANN, JONES and HORTON CONCUR.