IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 46021

| | | |
|---|---|---|
| TIFFINY OVERHOLSER, nka TIFFINY TAYLOR, | ) ) ) | |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | |
| SHECKY J. OVERHOLSER, | ) ) | Boise, August 2018 Term |
| Respondent. | ) ) | Filed: December 20, 2018 |
| MARK TAYLOR and KATHRYN TAYLOR, | ) ) | Karel A. Lehrman, Clerk |
| Third Party Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| SHECKY J. OVERHOLSER, | ) ) | |
| Third Party Defendant-Respondent. | ) ) | |

Appeal from the Magistrate Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Thomas D. Kershaw, Jr., Magistrate Judge.

Order Denying Standing, <u>vacated</u>, and the case is remanded for further proceedings consistent with this opinion.

Fuller Law Offices, Twin Falls, for appellants. Daniel S. Brown argued.

Roy, Nielson, Barini-Garcia & Platts, Twin Falls, for respondent. Seth C. Platts argued.

_____

BRODY, Justice.

This appeal arises from the denial of standing to custodial grandparents under Idaho Code section 32-717(3). The mother placed her twelve-year-old son in the care of his grandparents on a full time basis in August 2017. Three months later the father petitioned the magistrate court to modify custody to grant him residential custody of his son. Although both Mother and

1

Grandparents petitioned the court to give Grandparents residential custody, the magistrate court, during a hearing on father's motion for temporary custody, determined that Grandparents did not have standing. Ruling from the bench, the magistrate court determined that Idaho Code section 32-717(3) on its face violated the father's constitutional rights because it placed Grandparents on the same footing as parents. The magistrate court also reasoned that the more specific time requirements set forth in the De Facto Custodian Act, Idaho Code sections 32-1701–32-1705,(I.C. § 32-1703) should govern. On a motion for reconsideration, the magistrate court, appearing to recognize our decision in *Hernandez v. Hernandez*, 151 Idaho 882, 884–86, 265 P.3d 495, 497–99 (2011) wherein we held that Idaho Code section 32-717(3) is constitutional, decided that Grandparents likely could not meet the requirements of Idaho Code section 32-717(3), reasoning that "[t]he court doubts that a short period of residence pursuant to an impermanent permission by one parent is a 'stable relationship.'"

Mother and Grandparents were granted permission to appeal the magistrate court's decision to this Court. On appeal, they argue that the magistrate court's decision is contrary to this Court's decision in *Hernandez*. We agree and vacate the magistrate's order denying standing and remand with instructions to determine whether Child was living with Grandparents at the time they petitioned the court and whether a stable relationship existed between them. If yes, the Grandparents should be allowed to participate in the custody determination within the boundaries set forth in *Hernandez*.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Child is thirteen-years-old. Mother and Father have been married to, and divorced from, each other twice. The magistrate court has managed Mother and Father's divorce proceedings, including custody amendments for Child, since September 2011.

Prior to this dispute, Mother and Father had joint legal and physical custody of Child with Mother having residential custody. Father received custodial access, exercised his visitation rights, and has paid child support. Child also resided with both parents for the times Mother and Father resumed their relationship.

In her answer to Father's petition for custody, Mother alleges that Child developed difficult behavior over the last few years—becoming "progressively disrespectful, rebellious, and impossible to control"—which led her to leave him in the care of her father and step-mother ("Grandparents"). Mother alleges that Grandparents moved to Twin Falls to help Mother raise

2

Child. Having acquired a home five doors down from Mother, Grandparents picked Child up every day from school, assisted with his homework, and otherwise provided everyday care of Child. Mother and Grandparents contend that Child's behavior at home and school dramatically improved as he resided with Grandparents.

According to Father's petition, after Child moved in with his Grandparents in August 2017, Father briefly moved to Twin Falls, residing with Grandparents "off and on" as he transitioned his residence to Idaho. However, Father later moved back to Elko, Nevada and currently resides there. In January 2018, Mother also relocated to Elko after marrying again.

On November 2, 2017, Father filed a petition and motion to modify custody and support in the divorce proceeding so that Father would have residential custody of Child. Mother then filed an answer and counterclaim, asking the court to give residential custody to Grandparents, subject to custodial access by both Mother and Father. Grandparents subsequently filed a Motion to Intervene and Petition for Custody. After filing a response to Mother's counterclaim, Father filed a Motion for Temporary Custody and Temporary Child Support. Two weeks later, the magistrate court granted Grandparent's Motion to Intervene. Both Mother and Grandparents then filed Declarations in Opposition to Father's Motion for Temporary Orders.

The magistrate court held a hearing on Father's motion for temporary custody. At its conclusion, the magistrate court granted Father temporary custody, and expressed concern over the meaning of "stable relationship" in Idaho Code section 32-717(3). The magistrate court explained: "…if we interpret this [statute] according to its clear, its meaning on its face, … then that's a pretty serious dent in a parent's constitutional right to parent their child. …I just think that's probably unconstitutional." The magistrate court also expressed concerns the statute would render the De Facto Custodian Act "pointless" and give a "third party equal standing with the parent to have a custody dispute." It then granted the Father's motion for temporary custody.

The next day, Mother and Grandparents jointly filed a Motion to Reconsider, to which Father filed an objection. The magistrate court denied the motion. Shortly thereafter the magistrate court granted Mother's and Grandparent's Motion for Permissive Appeal, and they timely appealed to this Court.

## II.    STANDARD OF REVIEW

This Court exercises free review over a lower court's conclusions of law. *Doe (2016-34) v. Doe*, 162 Idaho 254, 256, 395 P.3d 1287, 1289 (2017).

### III.    ANALYSIS

In making its legal determinations at the hearing on Father's Motion for Temporary Custody and on Mother and Grandparent's subsequent Motion for Reconsideration, the magistrate court ruled that Idaho Code section 32-717(3) is unconstitutional on its face, the more specific time requirements set forth in Idaho's De Facto Custodian statute govern Grandparents' request for standing, and that Grandparents probably did not have a "stable relationship" with Child where he lived with them only for a short period of time with the temporary permission of Mother. We disagree with the magistrate court's legal conclusions.

**A.  Idaho Code section 32-717(3) is facially constitutional.**

The magistrate court's overarching concern with the validity of Idaho Code section 32-717(3) is found in the following statement that was made from the bench:

> And if I just interpret [32-717(3)] to mean that if it so happens that a child is with grandparents for any time – a week, a month – and that the relationship between the grandchild and grandparents is stable, that the grandparents thereby become equal to parents in a custody dispute, I just think that's probably unconstitutional, and it certainly goes beyond what anyone thinks the law ought to be, in terms of non-parents having rights over children.

Counsel for Mother and Grandparents commented that he had never had a magistrate court declare a provision unconstitutional. The magistrate court acknowledged that this was the ruling that was being made. The magistrate court echoed the same concern in its written ruling denying Mother and Grandparents' Motion for Reconsideration: "The court is also unwilling to conclude that a parent can at any time let a child stay with grandparents and the grandparents thereby swiftly gain parental rights equal to those of the other parent." Fairly read, the magistrate court determined that Idaho Code section 32-717(3) is facially unconstitutional. We agree with Mother and Grandparents, that this conclusion is contrary to our holding in *Hernandez v. Hernandez*, 151 Idaho 882, 884–86, 265 P.3d 495, 497–99 (2011).

Section 32-717(3) states:

> (3)  In any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements are in the best interests of the child.

We declared this statute to be facially constitutional in *Hernandez*. 151 Idaho at 885, 265 P.3d at 498. The magistrate court lost sight of our narrow construction of the statute.

4

Our decision in *Hernandez* makes it clear that special weight has to be given to the parents' desires when applying Idaho Code section 32-717(3). We explained:

> The magistrate judge did a remarkable job of applying Section 32-717(3) in this case. The magistrate found that Charles was a fit parent and therefore presumed that Charles' wishes with respect to his children were entitled to great deference. Indeed, the magistrate gave "special weight to the wishes of Charles" and noted "that [Charles] wishes to have primary custody of his children as well as to control when Janice is to exercise custodial time or visitation." The magistrate recognized, however, that Janice proved the children had been living with her in a stable relationship and therefore allowed her to participate in the custody determination pursuant to Section 32-717(3). The magistrate carefully considered the best interests of the children, the fact that they had formed a strong bond with Janice, and the fact that Charles had tried to have a better relationship with them despite some resistance from Janice. After considering at length what would be in the best interest of the children, the magistrate concluded that Charles should have sole legal custody and he should share physical custody with Janice. The magistrate thus gave due regard to Charles' parental rights, but balanced them with the competing interests of the children.

Id. at 887. The key language here is that the magistrate gave the father's wishes "great deference" and "special weight"—a consideration he was entitled to as the biological parent. *See id.*

The rights of parents over "the care, custody, and control of their children… [are] perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). This liberty is protected by the due process clause of the Fourteenth Amendment, which guarantees fair process when the state deprives a parent of his right to raise his child. U.S. Const. amend. XIV, § 1; *Troxel*, 530 U.S. at 65. In *Troxel v. Granville*, a plurality of the U.S. Supreme Court held that so long as a parent is fit, "there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel*, 530 U.S. at 68–69. The Supreme Court then held that the "breathtakingly broad" Washington statute at issue—which permitted any third party to petition the court for visitation rights—infringed on Granville's parental rights. *Id.* at 67. As applied in those circumstances, the statute was unconstitutional because the Washington courts failed to give special weight to Granville's decisions over her daughters' care, and, instead, put the burden on Granville to disprove grandparent visitation rights were in the children's best interests. *Id.* at 69.

5

Ultimately, *Troxel* recognized that state courts are in the best position to protect constitutional rights through the careful application of non-parental custody and visitation statutes. *See id.* at 73. As explained by the Supreme Court:

> We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree … that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care." Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter.

*Id.* (internal citations omitted). In examining whether a state statute infringes on parental rights to manage the care, custody, and control of their children, a court should narrowly construe non-parental custody and visitation statutes, as well as afford the parents' wishes and decisions "special weight" in determining the child's best interests. *See id.* at 68–73. After all, there is "the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* at 69.

Following the constitutional guideposts set forth in *Troxel*, this Court narrowly construed Idaho Code section 32-717(3) in *Hernandez* to address and defer to a parent's constitutional rights to raise his child. 151 Idaho 882, 884–86, 265 P.3d 495, 497–99 (2011). Given the narrow construction we have given the statute, the magistrate court's conclusion that it is facially unconstitutional was error.

**B. The magistrate court incorrectly found a conflict between the De Facto Custodian Act and Idaho Code section 32-717(3).**

Several of Idaho's statutes enable non-parents to seek custody of a child, including Idaho Code section 32-1701 (the De Facto Custodian Act); Idaho Code section 32-717(3) (enabling grandparents to intervene in a divorce case where the child actually resides with a grandparent); Idaho Code section 32-719 (permitting grandparents and great-grandparents to seek visitation rights); and Idaho Code section 15-5-204 (authorizing a guardianship proceeding where a child was neglected, abused, abandoned, or whose parents cannot provide a stable home environment). These are various "keys to the courthouse," with each protecting both the parents' and children's rights in different ways. *See Doe (2016-34)*, 162 Idaho at 257, 395 P.3d at 1290.

Idaho Code section 32-717(3) specifically provides: "In any case where the child is actually residing with a grandparent in a stable relationship, the court may recognize the grandparent as having the same standing as a parent for evaluating what custody arrangements

6

are in the best interests of the child." The magistrate court found that if it read this provision to allow Grandparents to assert a custody claim where the child had not resided with them for the time required under Idaho's De Facto Custodian Act, it would render the De Facto Custodian Act "pointless." While both Idaho Code section 32-717(3) and the De Facto Custodian Act provide similar functions to third parties entering custody disputes, each ultimately serves to provide different processes to diverse parties. Both are separate, narrow avenues to court.

For example, the De Facto Custodian Act provides specific processes for a third party to seek custody of a child, as well as clear definitions of which individuals qualify as de facto custodians. *See* I.C. §§ 32-1701–32-1705. Under Idaho Code section 32-1703(1):

> "De facto custodian" means an individual who: (a) Is related to a child within the third degree of consanguinity; and (b) Either individually or together with a copetitioner has been the primary caretaker and primary financial supporter of such child has resided with the individual without a parent present and with a lack of demonstrated consistent participation by a parent for a period of: (i) Six (6) months or more if the child is under three (3) years of age; or (ii) One (1) year or more if the child is three (3) years of age or older.

In addition to a specific time requirement, this definition confines potential custodians to within three degrees of consanguinity, which would include the child's parents, grandparents, great-grandparents, siblings, uncles, and aunts. *See* Robert K. Sitkoff and Jesse Dukeminier, WILLS, TRUSTS, AND ESTATES 85–86 (Rachel E. Barkow, et al. eds., 10th ed. 2017); *Consanguinity*, BLACK'S LAW DICTIONARY (8th Ed. 2004). Meanwhile, Idaho Code section 32-717(3) applies only to custodial grandparents when their grandchild resides with them in a stable relationship. Thus, each of these statutes applies to different parties, with the De Facto Custodian Act applying to a greater number of petitioners.

In addition, the De Facto Custodian Act requires different standards of proof in its custody determinations. First, "clear and convincing evidence that the petitioner or intervenor is a de facto custodian," must be shown. I.C. § 32-1704(6). Once the petitioner establishes she is a de facto custodian, she must then "prove by a preponderance of the evidence that it is in the best interests of the child to be in the custody of the de facto custodian." I.C. § 32-1704(7). In contrast, Idaho Code section 32-717(3) does not establish a specific standard of proof to establish a stable relationship. The statute as a whole, however, directs the court to a best interest analysis in which the court examines several specific factors. I.C. § 32-717(1). Though both statutes address the best interests of the child for care and custody purposes, the standards and

processes—as well as the best interest analysis itself—differ in each provision. *See generally*, I.C. §§ 32-1701–32-1705, 32-717.

The De Facto Custodian Act, however, is not applicable here. Mother and Grandparents do not argue that Grandparents qualify as de facto custodians. The statutory provision before the magistrate court was Idaho Code section 32-717(3). Whether Grandparents have custody and are in a stable relationship with their grandson is a separate analysis than whether they are de facto custodians. Therefore the magistrate court erred in concluding that Idaho Code section 32-717(3) conflicts with the De Facto Custodian Act.

## C. The magistrate court's analysis of a "stable relationship" under Idaho Code section 32-717(3) failed to consider additional factors.

In its memorandum opinion denying Mother and Grandparents' Motion for Reconsideration, the magistrate court explained that the short period of time spent with Grandparents could not constitute a stable relationship under Idaho Code section 32-717(3). While time is a factor, it is only one of several considerations before the magistrate court.

The facts in *Hernandez* best illustrate the factors necessary to establish a stable relationship with a custodial grandparent. In *Hernandez*, a mother struggling with drug addiction left her two children—one of them an infant—in the care of their grandmother. *Id.* at 883. The father paid some child support and occasionally spoke to the children by phone. *Id.* at 883. Neither parent physically cared for the children after the mother turned custody over to the grandmother. *Id.* The grandmother was the children's primary caretaker. *Id.*

In reviewing the parties' claims in *Hernandez*, the magistrate gave great deference to the father, but recognized the grandmother provided a stable relationship for her grandchildren by raising them in her home for several years without physical help from either parent. *Id.* at 887. In essence, the grandmother's assumption of parental responsibilities—physical, financial, and otherwise—and established a stable relationship with her grandchildren in her custody. *See id.* at 888 (Eismann, J., concurring). Her efforts to raise the children were independent of, not collaborative with, the children's parents. *Id.* at 887. The fact that the mother in *Hernandez* voluntary left her children with their grandmother also indicated that the children had a stable relationship with their grandmother, because her affirmative choice turned custodial care over to the grandmother. *See id.* at 883 ("Section 32–717(3) applies only to children actually living with a grandparent in a stable relationship, and it is hard to imagine how this could happen without

8

some affirmative choice, or acquiescence, by the parent."). Importantly, the magistrate recognized the strong bond formed between the grandmother and her grandchildren as she provided consistent care to meet the everyday needs of the children, who depended on her. *Id. See also* I.C. § 32-717(1) (in determining the best interests of children, the court considers the interfamily relationships and the need for stability and continuity).

In addition, the magistrate court in *Hernandez* considered time an important factor to establish a stable relationship. The six years of full time custody demonstrated the grandmother's full time, perpetual care of her grandchildren. *Id.* at 887. Thus, while 32–717(3) does not impose any requisite period of time, the length of a child's custodial residency with his grandparents can indicate a stable relationship. *See id.*

Ultimately, *Hernandez* recognized a stable relationship where the custodial grandparent acted as a parent to the child, rendering the same medical, educational, mental health, and other daily needs a parent would have. *See id.*; *In Matter of Termination of Parental Rights of John Doe (2014-15); Idaho Dep't of Health & Welfare v. John Doe (2014-15) (In re Doe)*, 157 Idaho 765, 771, 339 P.3d 1169, 1175 (2014). This rule corresponds well with the legislative purpose of Idaho Code section 32-717(3), which was to "give children a chance to be cared for." Senate Health and Welfare Committee Minutes (Feb. 24, 1995) 2–3. Having established a stable relationship under multiple factors, as well as full time custody of the children, the grandmother in *Hernandez* could participate in the custody determination. *Hernandez*, 151 Idaho at 887, 265 P.3d at 500.

In this case, the magistrate court erred in its analysis of "stable relationship" because it only considered the time Child resided with Grandparents. Time, however, is only one factor indicating a stable relationship. The factors to consider in establishing a "stable relationship" are open-ended. There is no universal standard for defining a "normal parental relationship"; "whether such relationship exists depends on the circumstances of each case." *Doe I v. Doe II,* 148 Idaho 713, 715, 228 P.3d 980, 982 (2010) (citing *In re Adoption of Doe,* 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006)). Accordingly, the specific circumstances of each case must be given consideration in determining whether a stable relationship exists between Grandparents and Child. The magistrate court should consider, in addition to the passage of time, the provision of the child's medical, educational, mental health, and other daily needs. These considerations should also include an analysis of factors such as consistency, dependability, and the very nature

9

of the relationship between grandparents and a child. The magistrate court, however, is not limited to these factors alone.

## IV.    CONCLUSION

In light of the foregoing, we vacate the Order Denying Standing and remand to the magistrate court for proceedings consistent with this opinion.

Chief Justice BURDICK, and Justices HORTON, BEVAN and STEGNER, CONCUR.