**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No.47415**

| | | |
|---|---|---|
| In the Matter of | ) | |
| JOHN DOE I and JOHN DOE II, | ) | |
| Children Under Eighteen (18) Years of Age | ) | |
| _____ | ) | **Boise, January 2020 Term** |
| | ) | |
| STATE OF IDAHO, DEPARTMENT | ) | **Opinion Filed: February 4, 2020** |
| OF HEALTH & WELFARE | ) | |
| | ) | **Karel A. Lehrman** |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JANE DOE (2019-27) | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Owyhee County. T. Shane Darrington, Magistrate Judge.

The magistrate court's decree terminating Mother's parental rights is <u>affirmed</u>. Costs on appeal to Respondent.

Isaiah L. Govia, Nampa, attorney for Appellant.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent.

_____

BEVAN, Justice

## I. NATURE OF THE CASE

This is an expedited appeal. The magistrate court terminated Jane Doe's ("Mother") parental rights after finding clear and convincing evidence that Mother neglected her children, K.M. and R.M., and that termination was in the best interests of the children. Mother does not appeal the magistrate's finding that she neglected her children. She only appeals the magistrate court's finding that termination was in the best interests of the children. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother is the biological mother of two boys: K.M., age fourteen, and R.M., age four. On January 12, 2018, K.M. and R.M. were removed from Mother's home by the Idaho Department of Health and Welfare ("IDHW") because of concerns for the children's well-being. As part of the initial safety plan, Mother had to provide a hair follicle test, which returned positive for methamphetamine. The children were then declared in imminent danger by law enforcement and placed in foster care.

In March 2018, a case plan was implemented to address IDHW's ongoing concerns. The case plan listed specific tasks for Mother to complete. The tasks relevant to this appeal required Mother to: 1) demonstrate the ability to maintain an appropriate home environment; 2) refuse any person with an active criminal history or any person actively using illegal substances to frequent or live at Mother's home; 3) complete an approved protective parenting class; 4) attend weekly visitation with K.M. and R.M.; 5) attend monthly meetings with assigned caseworkers; 6) show the ability to provide for K.M. and R.M.; 7) remain free from any illegal substances and/or alcohol; and 8) complete a mental health assessment.

Multiple review hearings were held during 2018. A permanency hearing was ultimately scheduled in February 2019, at which IDHW reported that Mother had again tested positive for methamphetamine. At that point, IDHW changed the permanency plan from reunification to termination and adoption, with a secondary goal being reunification. A verified petition for termination of the parent-child relationship was then filed recommending Mother's parental rights be terminated because of neglect and because termination was in the children's best interests.

A termination trial was held on July 19, 2019. Three caseworkers testified about Mother's failure to comply with her case plan. Mother and K.M. also testified. At the end of the hearing, the magistrate court announced its ruling orally. The magistrate court found Mother's testimony lacked credibility and relied on other witnesses to find that Mother had neglected her children under Idaho Code section 16-2005(1)(b) because Mother had failed to reunify with her children and had failed to comply with her case plan[1]. The magistrate court also found

---

[1] Mother did not appeal the magistrate court's findings on neglect. The court's findings specifically noted that the children had been in care more than fifteen of the last twenty-two months. In addition, Mother: failed to sever relations with R.M.'s father, whose behavior around the children was inappropriate; failed to complete an approved protective parenting course; failed to meet regularly with caseworkers; failed to demonstrate her ability to provide for her children on a consistent basis; failed multiple drug tests; and failed to complete a mental health assessment.

termination of Mother's parental rights to be in the best interests of the children. As for R.M., the magistrate court found R.M.'s age of four weighed heavily in favor of termination because a young child needs a stable home that Mother could not provide. As for K.M., although K.M. preferred to stay with Mother, the magistrate court found termination to be in K.M.'s best interests because it was clear Mother influenced K.M. negatively as exhibited by Mother's behavior in court and by K.M.'s admission to knowledge and use of illegal substances.

The magistrate court signed[2] its written findings of fact and conclusions of law on August 5, 2019. An order terminating Mother's parental rights to K.M. and R.M. and the final judgment were entered on September 11, 2019. Mother timely appealed.

### III. ISSUE ON APPEAL

Whether the magistrate court erred in finding termination of Mother's parental rights was in the best interests of K.M. and R.M.

### IV. STANDARD OF REVIEW

"The United States Supreme Court has held that a parent has a fundamental liberty interest in maintaining a relationship with his or her child." *In Interest of Doe*, 164 Idaho 143, 145, 426 P.3d 1243, 1245 (2018). "Accordingly, a trial court's decision to terminate parental rights must be based on clear and convincing evidence." *Id.* at 146, 426 P.3d at 1246 (citing I.C. § 16-2009). "Clear and convincing evidence is generally understood to be 'evidence indicating that the thing to be proved is highly probable or reasonably certain.' " *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).

"An appellate court will not set aside a magistrate's factual findings so long as they are supported by substantial, competent evidence." *In Interest of Doe*, 164 Idaho at 46, 426 P.3d at 1246. "Substantial competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Doe v. Doe*, 148 Idaho 243, 245, 220 P.3d 1062,

---

[2] We take this occasion to note that the magistrate's initial pronouncement of oral findings, followed by signing a document entitled "Findings of Fact and Conclusions of Law" prepared by counsel for the State, while not erroneous, is viewed with disfavor by this Court. Termination of parental rights cases are among the most significant matters handled by the courts. These cases implicate fundamental constitutional rights that are "perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Overholser v. Overholser*, 164 Idaho 503, 507, 432 P.3d 52, 56 (2018) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). As such, we encourage magistrate court judges deciding these significant cases to draft and enter findings of fact and conclusions of law in writing, with the personal thought, insight, and analysis that these important cases deserve.

1064 (2009)). "[T]his Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Id*.

## V. ANALYSIS

**A.    Substantial and competent evidence supports the magistrate's finding that termination of Mother's parental rights was in the best interests of K.M. and R.M.**

Mother argues the magistrate court erred in terminating her parental rights after finding termination to be in the best interests of her children. According to Mother, termination was not in the best interests of her children because Mother has a close bond with her children, K.M. was not responding well to foster care, there was no evidence of violence between Mother and her children, and Mother tried to the best of her ability to comply with her case plan.

In response, IDHW argues the best interests' standard involves more than how a child is doing in foster care or what a child prefers regarding placement. IDHW argues the magistrate court's finding should be affirmed because Mother failed to show she could maintain a safe and stable environment for her children. IDHW highlights that the children now live in a permanent and stable home with parents who can meet their needs and that such a home is in the children's best interests.

"It is axiomatic that preservation of the family unit is a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution, and that a parent has a fundamental liberty interest in maintaining a familial relationship with his or her child." *In Interest of Doe*, 164 Idaho at 147, 426 P.3d at 1247. That said, Idaho Code section 16-2005(1)(b) provides: "[t]he court may grant an order terminating the relationship where it finds that termination of parental rights is in the best interests of the child and . . . [t]he parent has neglected or abused the child."

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship." *In Interest of Doe*, 164 Idaho at 147, 426 P.3d at 1247. There is "no set list of factors a court must consider" in determining the best interests of the child. *Matter of Doe (2018-20)*, 164 Idaho 511, 516, 432 P.3d 60, 65 (2018). In determining the best interests of the child, the trial court may consider several factors such as:

> [t]he stability and permanency of the home, unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in

4

protective custody, improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.

*Id.* (quoting *In re Doe (2013-15)*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014)). "The best interest analysis considers the reality that children need 'stability and certainty.' " *Id.*

For reasons set forth below, the magistrate court found that Mother was not a credible witness. This was specifically within the magistrate court's province and those findings are not subject to reweighing by this Court. *Matter of Doe I*, 165 Idaho 33, 437 P.3d 33, 39 (2019) ("This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties."); *Danti v. Danti*, 146 Idaho 929, 934, 204 P.3d 1140, 1145 (2009) (explaining this Court "will not make credibility determinations or replace the trial court's factual findings by reweighing the evidence."). Thus, "[t]he trial court has broad discretion in deciding whether to terminate parental rights, and this Court does not reweigh the evidence." *Matter of Doe (2018-17)*, 164 Idaho 98, 101, 425 P.3d 1241, 1244 (2018) (citation omitted).

As noted, the only issue Mother raises on appeal is whether there is substantial and competent evidence to support the magistrate court's finding that termination of Mother's parental rights was in the best interests of K.M. and R.M. She now argues that the magistrate failed to weigh the evidence in her favor. Her argument ignores our standard of review–we do not reweigh evidence on appeal.

In its ruling from the bench, the magistrate court found:

As the State has conceded, the best interest prong seems quite easy for [R.M.], the younger child. He has about fourteen years left of his majority [sic] and to be in a household where these things cannot be completed would be not in his best interest. The bigger problem is, as the State concedes, with [K.M.]. . . . This is why I think it is in his, or why I find it is in his best interest for parental rights to be terminated. That action [Mother communicating inaudibly with K.M while he testified] shows me the influence that [Mother] has over [K.M.]. For better or worse, as a mother, she has huge influence. That was demonstrated by that action. I find it further demonstrated by his starting to use controlled substances. Clearly that came or he learned that or, at least, knew of it from what he had seen his mother and her significant other do or talk about. He mentioned that he knew of it. That type of influence on a child, even at the age of fourteen, is very difficult to undo. But the sooner it starts to be undone, the better. And the sooner that the influence can be a voluntary influence rather than a required, and by that I mean,

5

I'm talking about parental rights. If foster parents or the department want [Mother] to be included, they can voluntarily do that. There would, there will be no mandate upon the termination of parental rights. So, I find that it's in [K.M.'s] best interest to have that influence excised from his life. I find that it is in [K.M.'s] best interest for parental rights [to be] terminated.

This ruling was reiterated in the magistrate's written findings of fact and conclusions of law. We hold the magistrate court's finding that termination of Mother's parental rights was in the children's best interests was supported by substantial and competent evidence sufficient to meet the clear and convincing standard.

Mother's case plan required Mother to maintain a stable environment for K.M. and R.M. She was to show such stability by remaining drug-free, refusing to associate with persons who might negatively impact Mother or her children, showing her ability to obtain employment, completing an approved parenting course and mental health assessment, regularly visiting K.M. and R.M., and attending monthly meetings with assigned caseworkers. Of those requirements, Mother only complied with the task involving weekly visits with K.M. and R.M. The remaining requirements went unsatisfied.

Mother's challenges with credibility are noted from the record. First, Mother testified she was no longer involved with R.M.'s father who had a history of domestic violence, illegal substance use, and inappropriate behavior with the children. Yet evidence established Mother continued her relations with R.M.'s father and permitted him to frequent her home. Evidence also showed it was likely R.M.'s father was still using illegal substances. Second, Mother testified that IDHW caseworkers made it nearly impossible to comply with the monthly meeting requirements of the case plan. Weighing Mother's testimony against the three testifying caseworkers, the magistrate court found the caseworkers to be more credible; the evidence established Mother was extremely difficult to contact, work with, and monitoring her progress was challenging at best. Third, Mother testified she was employed and could maintain a stable environment for her children but she did not provide any proof of employment or income. Fourth, Mother testified that she tried to obtain a mental health assessment but was repeatedly denied. Again, credible evidence was not provided to show compliance with this aspect of the case plan, or that Mother made reasonable efforts to accomplish the same in a timely manner. The evidence supporting the magistrate court's conclusions is thus substantial, and the magistrate's conclusions are far from erroneous.

6

The magistrate court found Mother's failed drug tests to be of particular concern. Mother testified that she had used illegal substances before and submitted to an assessment in order to undergo treatment for substance abuse. Even so, Mother testified that she never obtained treatment because she could not afford it. The magistrate court found Mother could have sought help from the court if finances were an issue, but she failed to do so. Mother also failed two hair follicle tests during the pendency of the action, and she also failed to comply with other requested substance abuse tests. According to the case plan, failure to comply is treated as a positive test. Thus, evidence existed establishing Mother did not stay drug free as required by her case plan.

These facts establish that Mother did not improve her situation to provide stability and permanency in her home for K.M. and R.M. Although K.M.'s desire to reside with his mother carries some weight, magistrate courts are vested with broad discretion when making determinations regarding what is in the best interests of the children in these cases. *See Matter of Doe (2018-17)*, 164 Idaho at 101, 425 P.3d at 1244; *Matter of Doe (2018-20)*, 164 Idaho at 516, 432 P.3d at 65 ("Whether harm to the child will result from a termination of parental rights is simply an area of inquiry that the trial court may assess *in its broad discretion* to determine whether termination is in the best interests of the child.") (emphasis added). The magistrate was thus free to analyze how foster care affected K.M., while also assessing the many other factors the court weighed in determining whether termination was in both boys' best interests. Courts are also expected to assess the stability of the parent's home and the parent's ability to improve her situation. Mother failed to improve her situation or show any meaningful efforts to change for her children. That failure supports the magistrate court's conclusion here. As a result, we conclude that substantial and competent evidence supports the magistrate court's finding that termination of Mother's parental rights was in the children's best interests.

## VI. CONCLUSION

The magistrate court's decree terminating Mother's parental rights to K.M. and R.M. is affirmed. Costs on appeal are awarded to Respondent.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.